## HARRINGTON v. SMITH ET AL.

1. ATTACHMENT AND SALE OF EXEMPT PERSONAL PROPERTY.— When a debtor has property of any kind in excess of the quantity covered by the exemption statute, it is his duty to interpose his claim of exemption prior to the sale, if he has notice of the levy and is in position to do so; but when he has only the amount, kinds and value of property covered by the statute, a levy upon and sale thereof is absolutely illegal, unless the exemption be waived. In such case it is the duty of the officer to set aside the exempt property.

2. WAIVER OF EXEMPTION RIGHTS.— Where the debtor was out of the
   state at the time of the levy, a letter to his creditor asking for a
   postponement of the case until he could " come down, and fix up
   everything satisfactory," but making no claim to exemption, was
   not a waiver of his exemption rights.

*Appeal from District Court of Larimer County.*

ACTION by Perry Harrington against John L. Smith
and Thomas H. Davy for trespass in seizing exempt prop-
erty.   Plaintiff was nonsuited, and appeals.

Messrs. HAYNES, DUNNING & ANNIS, for appellant.

Mr. T. M. ROBINSON, for appellees.

RICHMOND, C.   May 29, 1885, appellant was the head
of a family, residing in Larimer county, Colorado, a car-
penter by trade, and was the owner of two bay horses,
of the value of $200; one lumber wagon, of the value of
$80; one set of double harness, of the value of $25; one
cow and calf, of the value of $50,— which he claimed
were exempt from levy of attachment and sale under an
execution.   Smith was constable for that county; and
on that day appellee Thomas H. Davy caused a certain
writ of attachment to be issued and delivered to said
Smith, and directed him to take and seize the above
enumerated property.   It appears that at the time of the
levy, and even until after the 20th day of June of that
year, appellant was temporarily absent from the state.
He seeks to recover for the triple value of the property
so seized and sold.

On the 30th day of May, 1885, Davy wrote a letter to
appellant informing him that he had attached all of his
stock — harness and wagon included.   To this letter ap-
pellant replied, stating that he would return, without
fail, by June 20th, and arrange everything satisfactorily,
asking for a stay of proceedings until that date.   In this
letter no claim of exemption was set up, nor was the

claim made by any member of his family. The sale of the property took place subsequent to the 20th, of June, 1885 (the time when appellant had agreed to return and arrange matters).

In addition to the above stock seized by the sheriff, it appears that the constable levied upon four other cows and one calf belonging to appellant. There seems to be no dispute about the ownership, nor that the stock levied upon was all that appellant owned at the time, nor of the fact that he was detained, and unable to reach Colorado prior to the sale under the execution.

Motion for a nonsuit was granted, and exceptions noted. Thereafter a motion for a new trial was overruled. In denying the motion for a new trial, the court said that, "where the debtor knew that his proper was attached while it was yet within the control of the officer, so that it could be returned to him, it was his duty to demand its return, or to give notice in some way of his disapproval of the act. But, even if he might be silent and be safe under such circumstances, if he says anything or does anything in respect to the levy upon his property, it must be a disapproval of the officer's act; or else the fact that he does say something, and does not do or say anything to disapprove of the levy, should be construed into an acquiescence." The court formed its conclusion on the letter of June 9, 1885, written by appellant to his creditor, which is in words and figures as follows:

"Tunnel Camp, Wyo., June 9, 1885. Thos. H. Davy, Esq.: Yours of May 30th at hand to-day. In reply I will say that it is impossible for me to come home now, as the high water has washed out the head-gates, and the superintendent has gone to Cheyenne to get instructions from the company. If your letter had reached me one day sooner, I could have made other arrangements; but, as it is, I can't do anything. I wish you would postpone the case until the 20th, and I can come down and fix up everything satisfactory. I won't leave the work until

the superintendent comes home. I may not gain any-thing, but it is left in my charge. Yours, PERRY HAR-RINGTON.

"Do the best you can for me, and I will pay you. I will be there on the 20th without fail."

The judge, in the trial, intimated that he based his conclusion upon the principles laid down in Drake, Attachm. § 244a. The principle there announced is as follows: "The defendant, if aware of the levy, must at the time claim the exemption, or it will be considered he consents to it. Manifestly, he cannot set up such a claim after judgment rendered against him in the attachment suit." This principle is based upon Indiana authorities, which were undoubtedly influenced by the peculiar wording of the statute of that state, hereinafter referred to. The sole question for our consideration, therefore, is whether or not the conclusions of the court were correct.

This particular question has received no direct consideration in any of the causes involving the question of exemption heretofore heard in this court. The General Statutes of this state (1883, § 32, p. 601) provide as follows: "The following property, when owned by any person being the head of a family, and residing with the same, shall be exempt from levy and sale upon any execution or writ of attachment: * * * Working animals to the value of $200, one cow and calf;" * * * the "tools and implements or stock in trade of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business, not exceeding $200 in value."

Section 34 of said act provides that "if any officer or other person * * * shall take or seize any of the articles of property hereinbefore exempted from levy and sale, such officer or person shall be liable to the party injured for three times the value of the property illegally taken or seized, to be recovered by action of trespass with

costs of suit." For the purposes of this discussion, the above is all of the statute necessary to be mentioned.

It will be observed that nowhere in this statute referred to is there any language making it incumbent upon the debtor to select or point out which property he claims is exempt. Seemingly, there is great confusion in the authorities and text-writers as to what is the duty of the debtor at the time the officer seeks to levy upon the property, but a careful examination will disclose the fact to be that this confusion is the result of the different wording of the statutes. In Indiana the statute provides that, if any execution debtor shall claim property as exempted by virtue of this act, he shall elect whether he will claim personal or real property, or both, and shall designate the property so claimed. Undoubtedly, the decisions of Indiana are based upon this provision of that statute.

The statute of Illinois also provides that the debtor, under certain circumstances, shall select the property which he claims shall be exempt; and yet, notwithstanding that provision of the statute, it was held in the case of *Cole v. Green*, 21 Ill. 104, that "where a judgment debtor has but sixty dollars' worth of property he need not prove a formal or express selection by him of that property in order to protect it from levy and sale on execution. If a debtor has but sixty dollars' worth of property the statute exempts it from the effect of any judgment, execution or attachment. It is placed beyond the reach of the law, unless by the voluntary act of the owner."

The argument of the court in arriving at this conclusion is to the effect that there can be no selection where there is nothing left,— one may take the whole, but he cannot select the whole; and that the matter of selection, under the statute, could not be made in this particular case. In such case, the statute, by its own office, sets apart the whole property to the use of the debtor, and absolutely exempts it from levy and sale on execution; and to it no judgment, execution or attachment can exist.

So far as the two horses were concerned, in the case at bar, there is no doubt, from the testimony, but what they were all that appellant had. Consequently, it would not be necessary for him to indicate, directly or indirectly, that the property was exempt. It was the duty of the officer, who is supposed to know the property exempt by the statute, to leave such property so exempt with the execution debtor.

In the case of *Howard v. Rugland*, 35 Minn. 388, it was held that, "when an officer assumes to levy an execution upon and sell property which the law thus chooses and selects as exempt, the levy and sale are *per se* illegal, and the officer liable to the debtor without any demand, as is also the execution creditor who participates in the levy and sale."

Where the statute exempts a particular chattel, as a horse or a work-beast, and the debtor has but one, a selection is obviously not required, nor is the debtor required to claim the benefit of the statute. The officer must take notice of the fact that the chattel is exempt; and, where an officer sold a debtor's only horse, under such circumstances, a conviction of misdemeanor under the statute was sustained against him. *State v. Haggard*, 20 Tenn. 390.

In *Gilman v. Williams*, 7 Wis. 287, it was held: "It is not necessary for the judgment debtor to select or point out to the officer such articles of property as are specifically exempt by law from execution."

Upon a careful examination of all the authorities, we are inclined to think, under the statute of this state, that, when an execution debtor has property of a certain kind in excess of the exemption, it becomes his duty to interpose his claim of exemption prior to the sale, provided he is notified of the levy, and in a position to interpose such claim. This seems to be the rule adopted by this court in *Behymer v. Cook*, 5 Colo. 399, and is undoubtedly supported by the majority of authorities of states

with a similar statute. But, where the execution debtor had only a precise number, or property of the exemption value, under the statute, then, and in such case, a levy and sale under an execution is absolutely illegal, and without warrant, unless exemption be waived, and this is a matter of defense. *State v. Haggard, supra.* In such case it is the duty of the officer to set aside such property as is already exempt, under the statute, from levy and sale.

In the particular case at bar the court undertook or did construe the letter above recited as amounting to a waiver of the exemption rights, and granted a nonsuit. This, in our judgment, was error. The party was not present to claim the exemption until after the sale; and, so far as the evidence goes, the explanation of his absence was entirely satisfactory.

In *Haswell v. Parsons*, 15 Cal. 266, it was held: "The absence of the plaintiff * * * when the sale took place was a sufficient excuse for not claiming the exemption at the time." The purport of the letter, as we construe it, was that he desired particularly to have time allowed him in which he might settle the demand of the execution debtor. As has already been said, the levy of the attachment was illegal. The property was absolutely exempt from levy and sale. By the express terms of the statute under which the writ was issued, the office of the process was limited to property "not exempt by law from execution." Gen. St. § 2002.

A judgment against the debtor would create no lien upon this property. The attachment levy was without force or effect. The defendant was a mere trespasser. Under such circumstances, it is clear that the owner of exempt property, either at the time the levy is made or before or after the sale pursuant to the execution, may claim his property, unless his conduct has been such as to make it inequitable for him to assert his title. In this case, it must be assumed that the defendant knew

when he seized the property that it was exempt, and that the seizure was a trespass. The silence of the plaintiff, under the circumstances, therefore, was not alone sufficient. Some of this property was undoubtedly exempt. And the court erred in determining, as a matter of law, that the letter of June 9th was sufficient to defeat a recovery.

For error in granting nonsuit, we think the judgment should be reversed, and the cause remanded for further proceedings.

PATTISON and REED, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is reversed.

*Reversed.*