Bissell, P. J.,
delivered the opinion of the court.
This judgment was evidently entered on a misconception of the privilege and the duty of the exemption claimant, of the authority and responsibilities of the officer under the writ, and of the proper construction of the exemption statute. There *130 is considerable conflict in the cases concerning the duty of the claimant with respect to the assertion of his rights of exemption, and the powers of the officer with reference to the seizure of property. So far as those questions arise in this case, the particular principle involved has been settled by the supreme court, and we need not look farther for authority on which to declare the law. As a general proposition, it is established that the officer may enforce his writ against whatever property he finds in defendant’s possession, whether he be serving a writ of attachment or a writ of execution, unless the only property which the defendant has subject to levy is within the protection of the exemption statute. The earlier case undoubtedly declared the law to be that the duty rested upon the defendant to claim the exemption if he desired to insist on it. The subsequent decision draws a distinction between the case where the only property owned by the defendant is clearly within the statutory limit, and a case where the defendant has other property subject to levy. The later decision holding that, in the first instance the levy is illegal, and in the latter that the defendant must assert his rights. Behymer v. Cook, 5 Colo. 395; Harrington v. Smith et al., 14 Colo. 376.
These authorities do not state when the right of selection shall be exercised, nor when the claim shall be made; but since under some circumstances the claimant must make his selection,-the rule adopted in those cases which impose the duty on the claimant is the only one which can be followed. In general, those authorities state that the selection may be made, and the notice concerning it may be given at any time prior to sale under the process by which it was taken. Of course the rule would be the same in attachment as after judgment — although in the former the right to exercise the privilege would probably continue until the final entry, and an attempt to sell under the execution. Thompson on Homesteads and Exemptions, § 839; Freeman on Executions, §§ 211 et seq.
In this case it is fairly deducible from the record that the *131 defendant had other property than the horse which was seized. Since this is true, it follows that the officer had a light to take the property into his custody, and it thereupon devolved on the claimant to assert his rights, aud notify the officer that this particular horse was selected by him as a work-horse, and claimed as exempt under the statute. This the appellee did, and his notice was entirely regular, and it became the duty of the officer on receipt of it within a reasonable time thereafter to return the property to the custody of the attachment defendant. The importance of this statement will be recognized when it is remembered that the officer holding the first writ {Metcalf) undertook to discharge this duty, sent the horse back and tendered it to Holdrege, who refused to receive it. No right of action could have accrued to Holdrege as against Metcalf under this state of facts, for if the law cast upon him the duty to exercise the right of selection, and likewise gave to the officer holding the writ the right to seize the property, it necessarily follows that the right of return must accrue to the officer upon the service of the notice of the demand, and that this return if made or tendered would relieve him from liability to treble damages under the statute. Thus far the case is plain, and seems to have been accepted, since no action was brought against Met-calf for an illegal seizure. The case is nearly as plain under the facts which surround Madera’s connection with the transaction. When the horse was returned and tendered to Holdrege, and tied to the wagon for the purposes of surrender, Metcalf’s rights as officer under his writ were gone, and it was incumbent upon Holdrege to resume possession, and no right of action had then accrued to him for trespass for the taking. At this point, Madera, who held the second writ, was doubtless in error in the assertion of his powers thereunder, and the court was in error in its instruction on this subject. When Madera left the property with the defendant,, under Metcalf’s instructions, he undertook to compel Holdrege to turn out other property for the satisfaction of the process which he held, and when this was not done, he as *132 serted a right to retake the exempt animal into his possession. In this he was clearly wrong. There is no known principle of law under which an officer can force a person against whom he holds a process to aid him in discovering property, nor can he use his process as a club for the purposes of extracting tire information. If it happens that at the time he attempts to make his levy, the property which he is about to seize is exempt under the statute, the defendant may insist on his rights, and his negiect or his refusal even to point out other property will not clothe the officer with the power to take that around which the statute has thrown its protecting arm. It may be that this principle is not absolutely universal, and that if the defendant had two horses find fraudulently concealed one to prevent the service of the writ on it, claiming the other as exempt — by which proceeding he would obtain the benefit of two horses in place of one — the law would uphold the officer in taking that which was in sight, though claimed to be exempt. This seems to be the ruling in the case of Yates v. Gransbury, 9 Colo. 323. But the present case furnishes no facts to which this rule can be applied. The court consequently erred when it stated the law to be that it was the duty of the defendant to turn over the other animals in satisfaction of the claim, and that he was without the right to insist upon the exemption until he had performed this duty.
Although this is true, no injury seems to have come to Holdrege by reason of the officer’s conduct, nor did any cause of action come to him by reason of it. He refused to take the horse when Metcalf returned it, and although it was probably, in the contemplation of the law, in his possession when it entered the yard, and the officer transcended his rights when he retook it into his possession, the legal status of the parties was settled by their subsequent proceedings. After Madera took the horse away, Holdrege served a written demand on him for its return, claiming his statutory privilege. The case shows that after this demand, though at what precise date cannot be determined, Madera took the horse back to *133 Holdrege’s place and attempted to redeliver it. He went to the yard, found the gate closed and asked Holdrege to open it that he might return the animal. Holdrege declined, and ahsolutely refused to receive it, and confesses on the stand in course of his testimony that Madera would have delivered the horse to him if he would have received it. Under these circumstances, it cannot be held that he had a cause of action against the officer for a trespass as for an illegal taking, unless the construction of the statute, which the court evidently adopted and on which counsel insists, is justified by its terms. We do not so conclude.
The phraseology of the act undoubtedly is that, “ if any officer, etc., shall take or seize, etc., any of the articles, etc.” On the argument it was seriously insisted by counsel that the right of action for treble damages under the act accrues immediately upon the taking or seizure of property, and if it is not returned under the exemptioner’s demand before suit brought, the status of the parties is thereby settled and concluded. It was contended that they occupied precisely the same situation they would in the case of a seizure of the property of one by another, and a refusal to surrender on demand, which is always proof of conversion in the action of trover. But we think there must be in a case of this description something which is equivalent to a conversion of property by the officer to entitle the defendant to the enforcement of this penalty. To take and seize must be held to include in its legal significance the elements of conversion. No other construction would prevent the most manifest injustice. If the right of action for treble damages accrues immediately upon the seizure of exempt property under process, the defendant could recover from the officer at once three times its value, replevin what had been taken, pay his debt, have money and the goods left, and be likened unto the disciples on the banks of the Sea of Galilee, when they gathered up more than twelve basketsful of fragments beyond the amount of the original feast. If it be the law that the duty of selection must under some circumstances be discharged by the claimant, and *134 may be exercised atany time prior to the sale, this construction is impossible. This light to claim the exempt property draws after it a coequal right to be enjoyed by the officer to return it on demand. If the officer may lawfully seize under his writ, and the defendant may afterwards lawfully assert the exemption, it follows that the right of return must come to the officer after demand made.
The appellants attack the complaint because of the failure of the pleader to insert an allegation that the action was brought to recover the penalty specified in the statute. A good deal of stress was laid on the discussion of this proposition, and counsel seem to consider the pleading so fatally defective as to be subject to the criticism that it did not state facts sufficient to constitute a cause of action. It is not vulnerable to this objection. The pleader aptly and sufficiently stated all the facts constituting his cause of action — his title, his right under the statute, the levy of the process, his demand, the refusal to surrender, and all other facts essential to show his right to the possession of the property and the recovery of three times its value, and for this he prayed. These allegations were certainly a sufficient statement of a cause of action. Had they been adequately supported by the testimony, this would have enabled the plaintiff to succeed. His failure to prove a refusal to return the horse after demand, should the same result be reached ou a subsequent trial, would doubtless defeat his recovery, and the absence of both averment and proof of conversion would then become of first importance if the court should" be called on to pass on the matter of costs.
In the statement of facts preceding the opinion, we have recited a meager history of the mortgage under which a third party took the property from the custody of Madera after Holdrege’s refusal to receive it, and under which it was subsequently sold and applied to the satisfaction of the mortgage debt. Under some circumstances, this proceeding might possibly operate as a defense to the officer when he was sued under the statute for the illegal taking. The matter is not *135 sufficiently developed in the present record to enable us to speak definitely concerning it. It was not pleaded by way of defense, nor was the truth about it sufficiently specific to entitle us to express a definite conclusion concerning the legal results flowing from its enforcement. Counsel have insisted that if the property were taken under the mortgage, then the officer could not be held liable, since the law would assume under the circumstances that the property was in Holdrege’s possession when the mortgagee attempted to enforce it. It is insisted otherwise — that the mortgage really belonged to McAllister, the creditor, who was using his attachment suit as a means of declaring the mortgage due, that he -might enforce it to the prejudice of the debtor. In the silence of the record, and in the absence of a sufficient issue to raise them, we are unable to pass on these questions. Probably the only possible importance of any proof, on this matter would be seen in some application which might be made to the court concerning the imposition of the costs in this suit. If, on the subsequent trial, the jury should find that the officer in good faith offered to return the property and Holdrege refused to receive it, then the law would attach to this proof the legal effect of a waiver of exemption rights, and the creditor would have the right to sell the property under subsequent judicial proceedings, or to take it and sell it under his mortgage security. The question would then remain whether this suit was so prematurely brought as to disen title the plaintiff to recover his costs. The court will doubtless be able on the subsequent investigation to so determine these matters as to make a proper and equitable adjustment of the expenses incurred in this litigation. It has been referred to because insisted upon in argument, and since the case must go back for a farther trial, the court has deemed it wise to throw out these suggestions for the guidance of the court on the subsequent hearing.
The judgment is erroneous, and because of the errors committed by the trial court it must be reversed, and the case remanded for a new trial in conformity with this opinion.

Reversed.